SCHWEGLER BROS., INC., Plaintiff, *v.* GEORGE JOHNSON, Defendant.

City Court of Buffalo, November 9, 1936.

*Alfred M. Kramer,* for the plaintiff.

No appearance for the defendant.

SUMMERS, J. In October the buyer (defendant) purchased of the seller (plaintiff) a radio at the price of sixty-four dollars and ninety-five cents. Till January all went well, then it came to pass that the buyer ceased paying his installments, whereupon the seller seized the radio and sold it. The radio thus passed out of the buyer's life as a thing of amusement but remained as a source of prolific remorse. During the harmonious interlude the buyer had paid eleven dollars to the seller, who now seeks to recover some fifty dollars additional under the Uniform Conditional Sales Law of this State (Pers. Prop. Law, § 60 *et seq.*), the provisions of which seem to have been meticulously complied with. If the seller succeeds, the interesting result will follow that the buyer will have paid some sixty-one dollars and have nothing.

The prudent may believe that the lesson the buyer learned of the danger of modern merchandising was purchased cheaply, while the cynic might comment that the freedom from the racket of the radio would be worth the sixty-one dollars. The student of social justice, however, would doubtless express wonderment at legal justice so administered. Even a judge of an inferior court finds himself longing for a Portia to point a way out. In her absence, he must try to escape from this legal labyrinth as best he may.

Our immediate legal problem is the interpretation of a statute. It must be remembered that a statute is but one of the many rules inscribed on the scroll of our common law, which scroll runs back into the twilight of history.

The story of all systems of law contains a chapter on the struggle through formalism to fairness. We smile smugly at the antiquated legal fetishes and calmly overlook those of our own day.

Maine, in his " Ancient Law," tells us that the old courts refused to dispense with a single legal gesture and that it was in an endeavor to escape this slavery of formalism that our modern law of property had its beginning.

At the time of the Norman conquest came the " Seal " with its majesty of Roman origin. For a while it was an impervious veil beyond which the eye of the law refused to see. Even this majestic wafer of wax gradually lost its mystic power and was forced to be satisfied with becoming a simple tool of justice.

But fetishes are elusive things; they throw off the garment of one age to take on the vestments of the new. Herbert Spencer in his day admired the formalism of law, with its indifference to human justice, clothed in the pseudo-philosophic robes of " *laissez faire*."

Today we are told that the hands of the court are bound by the rules of interpretation, that the words of the Legislature must be blindly followed, and that no matter how vicious the results may be, they must be carried out to the bitter end, thus belying the gentleness of the legislators as we know them as individuals and maligning their collective humanity.

It is believed that a proper rule of interpretation is the reading and application of statutes, not as isolated bits of legislative creation written to stand alone, but rather as part of our whole legal tradition viewed in the light of today's requirements.

One of these pressing requirements of today is aptly phrased by Professor Cohen thus: " We need care that the power of the law be not used for unconscionable purposes such as those who exploit the needs of those in dire necessity among their fellows."

The seller in this case is asking that the State, through its arm, the court, shall penalize the buyer for failing to keep his agreement in regard to the radio in the total sum of some sixty-one dollars on a sixty-four dollars and ninety-five cents radio, although the seller took the radio back in four months.

No pressing economic need of a commercial system can be urged as requiring this result. Or, if such economic necessity is urged, society could well afford to do without a method of doing business so devastating to a decent sense of justice.

Neither can we countenance the contention that legislative intention makes this result imperative; to accept this would be but the maligning by the court of a co-ordinate branch of the government, the legislative.

Whenever greed pushes legalistic ingenuity beyond the bounds of obvious justice, the courts have refused, under one guise or another, to follow it.

Long ago, and in every legal system of respectability, the grasping hand of the mortgagor has been held back from the full fruit he sought to gather, under the exact letter of the bond. One who would recover an unconscionable penalty, or unduly press a forefeiture, found the court refusing him aid.

The fertility of the judicial mind has never failed to design a legal weapon to battle greed. Sterility, at least mental, it is hoped, is not to be the curse of the extant judiciary.

As these matters, so far as the defendants are concerned, arise among the financially lowly, and hence seldom, if ever, reach the sunlight of the superior intellectuality of the higher courts, judicial succor must come to them, if succor comes at all, from lowly judges, at least in the first instance.

It is submitted that when, as in the present instance, the relief asked under exact legal formalism clearly passes the bounds of justice, that resort be had as in many other comparable instances in our law, to an adaptation of the thought underlying the rule of " *quantum meruit*," or, in other words, let the seller have what a reasonable man would say is just under all the facts and circumstances, which in this instance we find to be ten dollars.

Let judgment be entered thus, with costs.